[No. 3372–4–III.   Division Three.   May 29, 1980.]

R. A. HANSON COMPANY, INC., *Appellant,* v. AETNA INSURANCE COMPANY, *Respondent.*

*Patrick A. Sullivan, L. H. Vance, Jr.,* and *Winston & Cashatt,* for appellant.

*Curtis Shoemaker* and *Paine, Lowe, Coffin, Herman & O'Kelly,* for respondent.

ROE, J.—In 1972, R. A. Hanson Company, Inc., in the district court in California, sued one of its former employees and Constructora Daroel, S.A., for various claims relating to the alleged misuse of Hanson's trade secrets, and patent infringement. That employee, Robert James, counterclaimed, alleging interference with prospective advantage, inducing breach of contract, and abuse of process. Hanson tendered defense of the counterclaim to its insurer, Aetna, based on an insurance policy covering, *inter alia,*

(A)—False arrest, detention or imprisonment, or *malicious prosecution;*

(B)—. . . libel or slander . . . in violation of an individual's right of privacy;

(Italics ours.) Coverage for these events extended only to their occurrence in the United States or Canada. Aetna considered all the information it had and rejected the tender based on its counsel's opinion that there was no coverage.

The counterclaim was later amended to include allegations of antitrust law violations. On Hanson's motion, the federal court in 1976 dismissed without prejudice the interference with prospective advantage and abuse of process counterclaims. Hanson's brief in federal court demonstrated that the statute of limitation for abuse of process was 1 year, and distinguished that type of action from malicious prosecution. Aetna was not notified of the dismissal. In August 1976, James filed a second amended counterclaim, this time alleging abuse of process within the statutory period, and alleging libel or slander. Aetna was not notified of the existence of this counterclaim, though Hanson continued to insist that Aetna defend the action. Aetna requested additional information from Hanson so that it could decide if and when a duty to defend arose. In November 1976, Hanson replied to Aetna's request and stated:

> [T]he policy in question expressly provides coverage for malicious prosecution which is a generic label covering both abuse of process and wrongful use of civil procedure as well as the criminal tort—malicious prosecution.

Hanson and James settled. When Aetna refused to pay the settlement, Hanson commenced this suit alleging breach of contract because of wrongful refusal of tender. Hanson moved for summary judgment on the issue of liability; Aetna moved for a summary judgment of dismissal.

The trial court found a difference existed between the actions of abuse of process and malicious prosecution, that Aetna relied on that distinction, and that the refusal to

defend was proper. The court determined that the counter-claim here was sufficiently definite that Aetna had no obligation to go beyond the face of the pleadings to determine if there were any covered events giving rise to its duty to defend.

Hanson argues that Aetna's duty to defend is to be determined not by merely looking at the pleadings on their face, but by the insurer conducting its own investigation to find facts which would bring the counterclaim within Aetna's policy coverage.

*Holland America Ins. Co. v. National Indem. Co.*, 75 Wn.2d 909, 911, 454 P.2d 383 (1969), states that as a general rule, an insurer's duty to defend "arises when the complaint is filed and is to be determined from the allegations of the complaint." *See Tieton v. General Ins. Co. of America*, 61 Wn.2d 716, 380 P.2d 127 (1963). The insurer need look only at the face of the petition or complaint. 7C W. Berdal, *Appleman's Insurance Law and Practice* § 4683 (1979). James' counterclaim allegations do not appear on their face to include any insurable events.

█ Neither party has asserted that the law of another state should apply to this case, so we shall use Washington law. A party alleging civil malicious prosecution must prove five elements:

(1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings *terminated on the merits in favor of the plaintiff*, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution.

(Italics ours.) *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 497, 125 P.2d 681 (1942). *See Gem Trading Co. v. Cudahy Corp.*, 92 Wn.2d 956, 962–63, 603 P.2d 828 (1979). In an abuse of process claim, the "plaintiff need not show that the suit was groundless or terminated in his favor or that the process complained of was obtained without

probable cause." *Gem Trading Co. v. Cudahy Corp., supra* at 963 n.2.

Under the terms of the policy, Aetna had no duty to defend an abuse of process claim, and from the face of the pleadings, the elements of malicious prosecution were not alleged.

However, there are exceptions to the general rule that an insurer need look only to the pleadings to determine the existence of coverage. One exception is where the allegations are in conflict with the facts known to or ascertainable by the insurer. *See* Annot., *Allegations in third person's action against insured as determining liability insurer's duty to defend,* 50 A.L.R.2d 458, 497, (1956); 14 R. Anderson, *Couch Cyclopedia of Insurance Law* § 51:47 (2d ed. 1965 & Supp. 1979).

Appleman states that a duty to defend arises from facts known or reasonably ascertainable by the insurer, and the insurer may not rely on the pleadings alone. An insurer must defend if the claim is potentially within the policy. 7C W. Berdal, *Appleman's Insurance Law and Practice* §§ 4683, 4684.01 (1979). *See Babcock & Wilcox Co. v. Parsons Corp.,* 430 F.2d 531, 538–39 (8th Cir. 1970); *Gray v. Zurich Ins. Co.,* 65 Cal. 2d 263, 419 P.2d 168, 54 Cal. Rptr. 104 (1966); *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* 212 Kan. 681, 512 P.2d 403 (1973). Thus, modern rules of notice pleading, which do not require the definiteness of former rules, may change the general rule. There is a greater duty placed on the insurer to determine if there are any facts which could fall within the pleadings, thus giving rise to an obligation to defend. *See Ross Island Sand & Gravel Co. v. General Ins. Co. of America,* 472 F.2d 750 (9th Cir. 1973); *National Steel Constr. Co. v. National Union Fire Ins. Co.,* 14 Wn. App. 573, 543 P.2d 642 (1975) (dicta). Washington adopted notice pleading effective 1967.

A second exception to the general rule arises when the allegations of the complaint are ambiguous or inadequate. Then facts which might give rise to potential liability must be investigated. *Insurance Co. of N. America v. Insurance*

*Co. of the State of Pa.,* 17 Wn. App. 331, 334, 562 P.2d 1004 (1977), *review denied,* 89 Wn.2d 1013 (1978). Defendant's duty to defend is not limited to those matters recited in the party's complaint. *Farmers Home Mut. Ins. Co. v. Insurance Co. of N. America,* 20 Wn. App. 815, 819, 583 P.2d 644 (1978), *review denied,* 91 Wn.2d 1014, *cert. denied,* 442 U.S. 942, 61 L. Ed. 2d 312, 99 S. Ct. 2885 (1979). *See* 14 R. Anderson, *Couch Cyclopedia of Insurance Law* § 51:45 (2d ed. 1965 & Supp. 1979); Annot., *Allegations in third person's action against insured as determining liability insurer's duty to defend,* 50 A.L.R.2d 458, 504 (1956).

■ Another rule requires a liberal construction of the pleadings to bring them within the scope of the insurer's obligation to defend. *Berkeley v. Fireman's Fund Ins. Co.,* 407 F. Supp. 960 (W.D. Wash. 1975). When the parties to a contract use certain language (*i.e.,* "malicious prosecution"), absent language to the contrary, it will be presumed that the parties intended those words to be construed in accordance with established rules of law. 1 R. Anderson, *Couch Cyclopedia of Insurance Law* § 15:20 (2d ed. 1959 & Supp. 1979).

■ None of the foregoing exceptions applies here. The trial court found that the words "malicious prosecution" in the policy are not ambiguous. We agree. Ambiguity is a question of law for the court. In construing contracts, words are to be given their ordinary and usual meaning. Ambiguous means "'Capable of being understood in either of two or more possible senses.'" *Ladum v. Utility Cartage, Inc.,* 68 Wn.2d 109, 116, 411 P.2d 868 (1966). There is a clear distinction in Washington law between abuse of process and malicious prosecution. Hanson could have insured against abuse of process, but it did not. Presumably, the words of the policy have some meaning, purpose and limit. Insurance against malicious prosecution does not cover abuse of process.

■ There was no reason for Aetna to have looked beyond the face of these pleadings based on an assertion

that they were ambiguous. Hanson asks us to adopt a rule requiring the insurer to go beyond the face of the pleadings to ascertain facts which might require the insurer to accept a tender of defense. This would be contrary to the established law that, assuming no ambiguities in the pleadings (*Farmers Home Mut. Ins. Co. v. Insurance Co. of N. America, supra; Insurance Co. of N. America v. Insurance Co. of the State of Pa., supra*), the insurer need not look beyond the face of the pleadings. *Holland America Ins. Co. v. National Indem. Co., supra; Tieton v. General Ins. Co. of America, supra; Lawrence v. Northwest Cas. Co.,* 50 Wn.2d 282, 311 P.2d 670 (1957); *Hering v. St. Paul–Mercury Indem. Co.,* 50 Wn.2d 321, 311 P.2d 673 (1957). To rule otherwise would mean that in every case, unless the averments in the complaint specifically disproved coverage, the carrier would have to investigate coverage. We do not perceive that to be the law.

We do not know what the insurer would have found had it gone beyond the face of the pleadings and conducted an independent investigation of James' allegations. We do know that Aetna's requests for more information—conceivably the start of an investigation—went essentially unanswered by Hanson. We do know that Aetna consulted counsel in California, supplied it with all the information it had, and determined that the James counterclaim was not covered by the policy. In our view, Aetna conducted a reasonable investigation under the circumstances of this case. We have reviewed the long and detailed counterclaims comprising 19 pages. There is no allegation of libel or slander, invasion of privacy, or malicious prosecution.

The summary judgment is affirmed.

GREEN, C.J., and McINTURFF, J., concur.